SEE, Justice
(dissenting).
I respectfully dissent, and I join Justice Woodall’s dissent.[8] I write specially to address certain issues raised in the main opinion.
The Lee County Sheriffs Department received information indicating that Wayne Lamar Jenkins had marijuana in his apartment. The sheriffs department obtained a search warrant based on an affidavit stating that Jenkins was in possession of marijuana. The warrant, however, did not mention marijuana; instead, it authorized a search of “[a]ny/all vehicles, people, or buildings located on or within the [curtilage] of [Jenkins’s] residence” for “[a]ny/all drugs, contraband] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items.”
Apparently as a result of the search, Jenkins was indicted for trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975. Jenkins moved to suppress the evidence of the marijuana and other evidence obtained pursuant to what he contended was an unlawful search warrant. The trial court held a hearing on the motion and suppressed the evidence because the search warrant was not supported by probable cause and, therefore, authorized an unconstitutional, general, exploratory search of Jenkins’s residence. The State appealed from the trial court’s order that granted Jenkins’s motion to suppress. See Rule 15.7(a), Ala. R.Crim. P.
The Court of Criminal Appeals reversed the trial court’s suppression order. State v. Jenkins, 26 So.3d 458 (Ala.Crim.App.2007). Despite the fact that “the search warrant contained the general term ‘drags’ rather than a more specific designation ‘marijuana,’ ” 26 So.3d at 462, the plurality opinion of the Court of Criminal Appeals held that the search warrant was supported by probable cause and that “the search warrant sufficiently described that law-enforcement officers were authorized to search for illicit drugs, which would include, but not be limited to, marijuana. Thus, the search was lawful, and the trial court erred when it granted Jenkins’s motion to suppress.” Jenkins, 26 So.3d at 463.
“The Fourth Amendment [to the Constitution of the United States] unambiguously states that ‘no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.’” Groh v. Ramirez, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (emphasis omitted). *478 “The Fourth Amendment’s requirement that a warrant particularly describe ... the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken.” Peavy v. State, 336 So.2d 199, 202 (Ala.Crim.App.1976). Jenkins argues that the warrant in this case violates “[t]he specific command of the Fourth Amendment to the Constitution of the United States ... that no warrants shall issue except those ‘particularly describing the ... things to be seized.’ ” Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983).
In Peavy, police executed a search warrant authorizing a search for “[a]ny controlled substances prohibited by the laws of the State of Alabama.” 336 So.2d at 201. The warrant was based upon an affidavit that averred that “there [were] controlled substances” at a certain mobile home. 336 So.2d at 200-01. No other statement was contained in the affidavit or the warrant that further specified the items to be searched for or seized. During the search, police found a single amphetamine pill on the dashboard of Peavy’s car, which was parked outside the mobile home. The tidal court denied Peavy’s motion to suppress the evidence of the pill, and he appealed to the Court of Criminal Appeals. That court stated that “[b]y its very language [the warrant] authorize^!] a general exploratory search. General exploratory searches are forbidden by Federal and State courts alike.” 336 So.2d at 202 (citations omitted). The Court of Criminal Appeals reversed the trial court’s ruling, holding that “[t]he search warrant in this case is a dragnet instrument and cannot pass Constitutional muster.” 336 So.2d at 202.
In the case before us, the warrant to search Jenkins’s apartment authorized a search for “[a]ny/all drugs, contraband] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items.” There is little to distinguish the warrant in this case from the one in Peavy, except that the warrant in Peavy expressly states that only “controlled substances” are to be searched for.
In Palmer, an informant told police that he had seen a large amount of cocaine at Palmer’s residence. The warrant that was issued authorized a search for “cocaine, ... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act.” 426 So.2d at 952. Palmer argued that the warrant authorized a “ ‘general exploratory search.’ ” 426 So.2d at 952. The Court of Criminal Appeals first noted that “a less precise description is required of property which is, because of its particular character, contraband.” 426 So.2d at 952. Nevertheless, the Court of Criminal Appeals held that the informant’s testimony that one specific drug was in Palmer’s residence did not give rise to probable cause to support the portion of the warrant authorizing a search for controlled substances in general. However,
“[t]he fact that there was no probable cause to believe that other controlled substances were within the defendant’s residence does not taint the entire warrant so that nothing seized during the course of the execution of the warrant was admissible. That part of the warrant authorizing a search for ‘any other illegal substance’, although invalid because not based on probable cause, was severable from that portion of the war *479 rant which authorized a search for cocaine.”
426 So.2d at 952.
In this case, there was similarly no probable cause to believe that there were drugs other than marijuana in Jenkins’s apartment; therefore, as in Palmer, the part of the warrant authorizing a search for any and all “drugs [and] contraban[d]” was invalid. However, unlike Palmer, in this case, there was no specific item, i.e., marijuana, mentioned in the warrant for which probable cause existed. The Supreme Court of the United States has “clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant.” Groh v. Ramirez, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).
In reaching its decision that the warrant in this case was not unconstitutionally broad, the main opinion relies on several cases decided by various federal and state appellate courts. Reliance on those cases, however, is misplaced. The warrants in those cases generally specified that the object of the search was illegal drugs, illicit drugs, controlled substances, or some other term that denotes illegal drugs, i.e., drugs the possession of which is prohibited by law.[9] The search warrant in Jenkins’s case authorized a search for “[a]ny/all drugs, contraband]” or for anything that is related to either of them.[10]
The following phrases have been held to be sufficiently descriptive to satisfy the particularity requirement of the Fourth Amendment: “ ‘narcotic drugs’; ‘any illegal drugs’; ‘marijuana, dangerous drugs, stimulant drugs, and hallucinogens’; ‘controlled substances’; and ‘narcotics, dangerous drugs, and narcotics paraphernalia.’” 2 Wayne R. LaFave, Search and Seizure § 4.6(b) (3d ed. 1996). However, LaFave goes on to note that “a more general reference to items which are contraband in nature but without even identifying their type is insufficient.” Id. The search warrant in this case suffers from that precise deficiency. It specifies a class of items as the object of the search, namely, drugs, but it fails to specify whether that object is illegal. Moreover, when the warrant does mention contraband it fails to specify the type of contraband that is the object of the search. A warrant authorizing a search for any illegal object or item is unconstitutionally broad. See United States v. Morns, 977 F.2d 677, 682 (1st Cir.1992) (noting that a warrant containing “the catch-all phrase authorizing seizure of ‘any other *480 object in violation of the law5 is impermis-sibly broad”).
The main opinion cites two cases, United States v. Horne, 198 Fed.Appx. 865, 871 (11th Cir.2006), and State v. Broell, 249 Mont. 117, 814 P.2d 44 (1991), in which, it claims, a warrant authorizing a search for “drugs and drug paraphernalia” was held as sufficiently descriptive for Fourth Amendment purposes. I am not convinced. The description of the warrant provided by the court in Home is factually ambiguous. At one point, the United States Court of Appeals for the Eleventh Circuit stated that the warrant “limited the search to drugs and drug paraphernalia”; however, the court previously in the opinion had indicated that the search warrant permitted the police to search for “illegal drugs, drug money, and any other drug or drug trafficking paraphernalia.” 198 FedAppx. at 871, 867.
In Broell the Supreme Court of Montana held that the search warrant authorizing a search for “drugs and drug paraphernalia” was valid when it was read in conjunction with the application for the warrant. The Supreme Court of Montana stated that “when the application [for the search warrant] is signed by the officer who is named in the search warrant and it is that officer who personally serves such warrant, the documents are construed together to determine whether the requirement of particularity describing the thing to be seized has been met.” Broell, 249 Mont, at 122, 814 P.2d at 47. The court concluded that “reviewing the search warrant and the application together, the fact that Officer Frederick was to search for and seize illegal drugs is inescapable.” Id.
The facts in the case before us are similar to those in Broell; however, the Supreme Court of the United States in Groh v. Ramirez, supra, appears to have rejected the principle adopted by the Supreme Court of Montana that the warrant may be read together with the application for the warrant in order to determine the scope of the warrant. In Groh, a federal agent prepared and signed an application for a search warrant, listing as the items to be seized “ ‘any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers.’” Groh, 540 U.S. at 554, 124 S.Ct. 1284. The warrant was issued, but it failed to identify any of the items that were mentioned in the affidavit. The agent who obtained the warrant led the team that conducted the search. The search uncovered no illegal weapons or explosives. Groh, 540 U.S. at 555, 124 S.Ct. 1284. Even though the federal agent who signed the application executed the search warrant, the Supreme Court held that “[t]he fact that the application adequately described the ‘things to be seized’ does not save the wamant from its facial invalidity.” The Supreme Court noted that it is the warrant that “requires particularity” and not “the supporting documents.” 540 U.S. at 557, 124 S.Ct. 1284.[11] Thus, Broell, too, is inapposite.
*481 Neither this Court nor the Supreme Court of the United States has directly addressed whether a warrant is unconstitutionally overbroad when the affidavit that supports it specifies only that marijuana is suspected, but the warrant authorizes a search for “[a]ny/all drugs” and contraband. The Supreme Court of the United States has stated, however, that
“unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.”
Groh, 540 U.S. at 560, 124 S.Ct. 1284.
I agree with the main opinion that we must recognize the realities law enforcement faces. See Ex parte Warren, 783 So.2d 86, 96 (Ala.2000) (See, J., concurring in the result) (“The assessment of probable cause turns on the weighing of probabilities in particular factual contexts, and it requires that the collected evidence ‘be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’ [Illinois v. Gates, 462 U.S. 213,] 231 [(1983)].” (citations omitted)). Where the informant’s affidavit in support of the petition for the warrant identifies that a variety of illicit drugs were present, I understand that a search warrant that authorizes a search for illicit drugs, drug paraphernalia, etc., may well be justified. Here, however, the informant specified one particular substance — marijuana. The main opinion does not offer any explanation as to why law enforcement needs a warrant to search for any and all drugs and for any and all contraband, and for any and every thing that is related to them — “scales, baggies, cash, weapons, documents, etc.” — when the affidavit specifically identifies marijuana as the item that is suspected to be at the site to be searched. In this case, the warrant did not merely expand the scope of the search from “marijuana” to “marijuana and other illegal drugs,” but deleted any mention of marijuana, subsuming the particular thing to be seized — marijuana—into the general class “[a]ny/all drugs, contraband]” or related items of whatever kind, without reference to the affidavit or some explanation for the broadened scope of the search.
The practice undertaken in this case appears to violate the requirement set out in Groh that “particular items described in the affidavit are also [to be] set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search).” 540 U.S. at 560, 124 S.Ct. 1284. See Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995) (“Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala.1985). Those exceptions include objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry ‘stop and frisk’ situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an excep *482 tion. Kinard v. State, 335 So.2d 924 (Ala.1976).”). None of the recognized exceptions to the prohibition against warrantless searches appears to be present or is ai*-gued in this case.
The argument that the warrant in this case does not violate the requirement of the Fourth Amendment that no warrant issue except those “particularly describing the ... things to be seized” apparently is premised on the “no harm, no foul” principle. The main opinion concludes that law-enforcement officers could search for marijuana in every place they could search for any other controlled substance and holds that, therefore, the search warrant actually issued did not impinge on Jenkins’s Fourth Amendment right to be free of unreasonable searches or seizures.[12] However, a search for marijuana justifies a significantly different search from one for illegal possession of prescription drugs — a search for which undoubtedly would fall within the purview of a warrant to search for “[a]ny/all drugs.” In such a search, the pills in the aspirin bottle may be analyzed, and the records of one’s doctor and pharmacist that may be present in the area to be searched would be subject to review. Under the approach suggested by the main opinion, every affidavit testifying to the probable presence of any particular illegal drug could be expanded into a general warrant providing for an intrusion without reasonable suspicion into the personal pharmacopeia and medical records of that individual.
Finally, I read the main opinion as essentially resting on the notion that anything found during a search for “[a]ny drug, contraband]” would in any event have been discovered in a search for marijuana. This application of the “plain view” doctrine turns that doctrine on its head.[13] It is true that law-enforcement officers engaged in an authorized search should not be required to turn a blind eye to what is in plain view. However, the argument here is that unexpected evidence of an illegal activity might be lying in plain view of a properly authorized search; therefore, the warrant can authorize a broader search than the Fourth Amendment would otherwise permit.[14] Because the first prong of the “plain view” doctrine is that “ ‘the police officer must lawfully make an “initial intrusion” or otherwise properly be in a position from which he can view a particular area,’ ” State v. Calhoun, 502 So.2d 808, 814 (Ala.1986) (quoting Texas v. Brown, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)), the warrant that *483 authorized the search has to be constitutionally sound, including its particular description of the things to be seized, before — not after — invoking the plain-view doctrine.
I respectfully dissent.

. As explained herein, I agree with Justice Woodall that the language in the warrant at issue here distinguishes this case from Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983). I also agree with Justice Woodall that the warrant in this case is unconstitutionally broad and that, therefore, this case conflicts with Peavy v. State, 336 So.2d 199, 202 (Ala.Crim.App.1976).

. See United States v. Ladd, 704 F.2d 134, 136 (4th Cir.1983) (warrant authorizing a search for items related to " 'smuggling, packing, distribution and use of controlled substances' ”); Carlton v. State, 449 So.2d 250, 250 (Fla.1984) (warrant authorizing a search for "all controlled substances” and other items relating to the sale or possession of controlled substances in violation of Florida law); State v. Williams, 297 S.C. 404, 407, 377 S.E.2d 308, 310 (1989) (warrant authorizing a search for "any illegal drugs”); State v. Stromberg, 783 P.2d 54, 55 (Utah Ct.App.1989) (warrant authorizing search for "controlled substances” and "drug paraphernalia”); State v. Olson, 32 Wash.App. 555, 556, 648 P.2d 476, 477 (1982) (warrant authorizing a search for “all illicit drugs and controlled substances”).

. It could be argued that listing "contra-ban[d]” as an object of the search specifies that the purpose of the search was to find and seize illegal drugs. However, this argument would be problematic because "[a]ny/all drugs” is separated from the word "contra-ban[d]” by a comma, and, therefore, "contra-ban[d]” cannot be read to describe the term "[a]ny/ali drugs.” In fact, the listing of "con-traban[d]” as a separate and independent object of the search would allow law enforcement executing the search warrant to search for and seize virtually any illegal item or substance — be it a drug or not.

. The Supreme Court in Groh does allow for a warrant to refer to other documents in order to satisfy the particularity requirement if "the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.” Groh, 540 U.S. at 557-58, 124 S.Ct. 1284. In his reply brief, Jenkins points out that "[t]here is no clear record the affidavit was attached to clarify any alleged ambiguity [in the warrant], and, although Deputy Jackson was present during the execution of the warrant, there is no record he explained the contents of the affidavit to the other officers and gave them an opportunity to read it.” Jenkins’s reply brief at 7. Therefore, it would appear that *481 Jenkins has met his burden under Groh of proving that the search warrant was invalid, even if Groh implicitly requires the defendant to prove the nonexistence of incorporation of extrinsic materials. See 5 Wayne R. LaFave, Search and Seizure § 11.2(b) (3d ed. 1996) (stating that "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution”).

. Because I address and reject this proposition, it is unnecessary for me to decide whether it is a new theory, raised for the first time by the State on appeal, or an additional specific reason given in support of the State's theory. See 26 So.3d at 473, n. 7.

. This Court stated in State v. Calhoun, 502 So.2d 808, 814 (Ala.1986):
"In Texas v. Brown, [460 U.S. 730, 736-37 (1983),] Justice Rehnquist, writing for the plurality, explained:
“ 'In the Coolidge [v. New Hampshire, 403 U.S. 443 (1971),] plurality's view, the "plain view” doctrine permits the war-rantless seizure by police of private possessions where three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion” or otherwise properly be in a position from which he can view a particular area.... Second, the officer must discover incriminating evidence “inadvertently,” which is to say, he may not “know in advance the location of [certain] evidence and intend to seize it,” relying on the plain-view doctrine only as a pretext.... Finally, it must be "immediately apparent” to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure....' ”

.In turn, I presume, this broader search would offer its own expanded plain-view cur-tilage, thereby fueling its own expansion.